# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES LOMAX** | : | CIVIL ACTION |
| v. | : | |
| **FRANK J. TENNIS, et al.** | : | NO. 16-6566 |

## MEMORANDUM OPINION

Savage, J.                                                                                          November 29, 2018

Plaintiff James Lomax, acting *pro se*, brought this § 1983 action arising out of his medical care and treatment while serving his prison sentence. He claims the defendants were deliberately indifferent to his medical needs when they denied him treatment for colorectal issues and did not inform him of his diagnosis. He also complains that he was transported to another prison in retaliation for filing multiple grievances regarding his medical treatment.

The Department of Corrections defendants, Frank Tennis, Michael Wenerowicz, Joseph Korszniak and Melissa Delliponti,[1] have moved for summary judgment. They argue that because they had no personal involvement in his medical care, they cannot be liable. Defendant Korszniak also contends he justifiably relied on the judgment of Lomax's treating physicians.[2] All defendants maintain the retaliation claim is barred by the statute of limitations.

The Health Services defendants, Corizon Health Services (Corizon) and Prison

---

[1] In his complaint, Lomax spells her name as "Delaponti." Her name, as appears in her declaration, is properly spelled "Delliponti."

[2] Tennis, Wenerowicz, Korszniak, and Delliponti, together, are the DOC Defendants. *See* DOC Def. Mot. for Summ. J. (Doc. No. 79) at 4.

Health Services (PHS) also move for summary judgment.[3] They argue that, even if they were "persons" amenable to suit under § 1983, Lomax has not alleged the existence of a policy or custom of denying medical treatment. Drs. John Symons and Bruce Blatt contend there is no evidence that Lomax suffered from any, let alone a serious, colorectal condition or that he was actually treated by either of them for colorectal problems.

We conclude that there is no dispute that Lomax's causes of action are barred by the statute of limitations. Even if his claims were not time barred, the undisputed facts show that Lomax did not have a serious medical condition which the defendants failed to treat and there was no retaliation. Therefore, because there was no constitutional violation, we shall grant summary judgment in favor of all defendants.

## Background

The facts are undisputed. Lomax has not responded to the defendants' motions for summary judgment, nor has he disputed their Statements of Undisputed Facts. Nevertheless, we must consider whether the defendants are entitled to judgment as a matter of law.

In his complaint, Lomax alleged that while an inmate at SCI-Rockview, sometime after June 2002, he began experiencing abdominal pain due to a pre-existing colorectal condition.[4] Corizon, formerly known as PHS, was independently contracted to provide health services for the Pennsylvania Department of Corrections.[5] Lomax alleged in his

---

[3] Corizon, PHS, Dr. Symons, and Dr. Blatt, together, are the Health Services Defendants. *See* Health Servs. Def. Mot. for Summ. J. (Doc. No. 73-1).

[4] Second Am. Compl. (Doc. No. 27) ¶¶ 20–23; DOC Def. Stmt. of Undisputed Facts (Doc. No. 79-1) (DOC SUF) ¶ 4.

[5] Health Servs. Stmt. of Undisputed Facts (Doc. No. 73-2) (Health Servs. SUF) ¶ 16.

amended complaint that while at SCI-Rockview, Dr. John Symons, a Corizon employee, treated him for a colorectal condition and ordered a colonoscopy in 2006 or 2007.[6] Lomax further claims that a colonoscopy in 2008 showed hemorrhoids and diverticular sigmoid colons. He alleges Dr. Symons did not inform him of the latter and did not treat him for that condition.[7]

Although Frank Tennis, SCI-Rockview's Superintendent, was aware that Lomax was being treated by a physician, he did not direct the medical treatment, alter medical records, or inform Lomax of any diagnosis.[8] The only communication Tennis had with Lomax regarding his medical treatment was when he responded to his grievances.[9]

In August 2008, Lomax was transferred to SCI-Graterford, where Michael Wenerowicz was the Superintendent and Joseph Korszniak was the Corrections Health Care Administrator.[10] Like Tennis, neither Wenerowicz nor Korszniak directed or interfered with Lomax's medical treatment or altered his medical records.[11] They addressed his grievances regarding his medical treatment.[12] Lomax has alleged that SCI-Graterford physician Dr. Bruce Blatt was only aware of Lomax's back condition.[13] Lomax has proffered no evidence to support the allegations in his complaint. He makes

---

[6] Second Am. Compl. ¶ 3.

[7] Health Servs. SUF ¶¶ 5–6.

[8] DOC SUF ¶¶ 2–3, 6, 9–11.

[9] *Id.* ¶ 12.

[10] *Id.* ¶¶ 14, 16, 25.

[11] *Id.* ¶¶ 19–20, 23, 28–29, 32.

[12] *Id.* ¶¶ 21, 30.

[13] Health Servs. SUF ¶ 7.

3

no effort to contradict the facts the defendants have developed during the course of discovery. Those facts show that Lomax had no medical restrictions preventing him from being assigned work at SCI-Graterford.[14] On September 22, 2008, he was assigned a job to scrub his cell block.[15] Lomax alleged Melissa Delliponti assigned him to a strenuous job in retaliation for his filing grievances regarding his medical treatment.[16]

On November 7, 2008, a corrections officer requested Lomax be removed from his work assignment because he failed to show.[17] Due to his absences, Delliponti and other members of Lomax's unit team voted to remove him from the position.[18] As a Corrections Employment Vocational Coordinator, Delliponti had no access to Lomax's medical records and was not involved in providing him medical treatment.[19] She made no decisions regarding his medical needs.[20]

As of December 19, 2014, Lomax still had no medical restrictions on his employment. He was assigned the position of Block Worker.[21] However, that same day, he requested to leave that assignment.[22] Delliponti did not assign him any work after then.[23]

---

[14] *Id.* ¶ 33.

[15] *Id.* ¶ 35.

[16] Second Am. Compl. ¶ 74.

[17] DOC SUF ¶ 36.

[18] *Id.* ¶¶ 37–38.

[19] *Id.* ¶¶ 39, 41–42.

[20] *Id.* ¶ 41.

[21] *Id.* ¶¶ 43–44.

[22] *Id.* ¶ 45.

[23] *Id.* ¶ 46.

4

## Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015).

Lomax has not responded to the defendants' motions. Even in the absence of a response to the motion or contravening facts, we must conduct an independent analysis to determine whether the movant is entitled to summary judgment. *See* Fed. R. Civ. P. 56(e)(3) advisory committee's note to 2010 amendment (recognizing that "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion"); E.D. Pa. Local R. Civ. P. 7.1(c). The court must ensure that "the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). In short, even in the absence of opposition, summary judgment may be granted only if the moving party demonstrates that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.

By failing to file a response within the specified time, "the nonmoving party waives the right to respond to or to controvert the facts asserted in the summary judgment motion." *Reynolds v. Rick's Mushroom Serv.*, 246 F. Supp. 2d 449, 453 (E.D. Pa. 2003) (quoting *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) and *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175–76 (3d Cir. 1990)). The

5

scheduling order clearly warned the parties that "[a]ll material facts set forth in the Statement of Undisputed Facts served by the movant shall be deemed undisputed unless specifically controverted by the opposing party."[24] Thus, our task is to determine whether, given these undisputed facts, the defendants are entitled to judgment as a matter of law.[25]

**Statute of Limitations**

The statute of limitations in a § 1983 action is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). The Pennsylvania statute of limitations for a personal injury action is two years. *Id.* (citing 42 Pa. Cons. Stat. § 5524(2)). Thus, the statute of limitations for § 1983 claims arising in Pennsylvania is two years.

Because Lomax filed this action on January 9, 2017, all causes of action based upon purported constitutional violations that accrued before January 9, 2015 are time-barred. Under federal law, a cause of action accrues when the plaintiff knew or should have known of the injury upon which his action is based. *Id.* Lomax's claims for deliberate indifference to his medical needs and transport to another prison in retaliation for his grievances accrued in 2008. Thus, because the statute of limitations expired before Lomax initiated this action, his claims are time-barred.[26]

---

[24] Amended Scheduling Order (Doc. No. 67) ¶ 6(c).

[25] Because Lomax failed to provide answers to Wexford Health Sources, Inc.'s First Set of Interrogatories and responses to Wexford's First Request for Production of Documents together with all requested documents as required by the Order of June 21, 2018 (Doc. No. 70), we dismissed all claims against defendant Wexford by Order dated July 18, 2018 (Doc. No. 78).

[26] Responding to the defendants' motion to dismiss raising a statute of limitations defense, Lomax argued that Pennsylvania's fraudulent concealment doctrine tolled the statute of limitations on his retaliation claims against the DOC defendants. Pl. Opp. Def. Mot. (Doc. No. 38 at 4–6). Generally, "state tolling principles also govern § 1983 claims" unless they contradict "federal law or policy." *Kach*, 589 F.3d at 639. "Pennsylvania's fraudulent concealment doctrine tolls the statute of limitations where 'through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry.'" *Mest v. Cabot Corp.*, 449 F.3d 502, 516 (3d Cir. 2006) (quoting *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985)). Even if the plaintiff establishes that the defendant engaged in fraudulent

Even if Lomax's claims were not time-barred, he would not be entitled to summary judgment because there is no evidence the defendants were deliberately indifferent to a serious medical need or that they retaliated against him.

**Deliberate Indifference**

*DOC Defendants*

Lomax alleges Tennis, Wenerowicz, Korszniak, and Delliponti were aware of his need for treatment and refused to provide it. He also claims they actively withheld information and falsified his medical records in order to deny treatment.[27] He offers no evidence to support his bald allegations.

The Eighth Amendment protection against cruel and unusual punishment extends to the prisoner's right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976). Thus, failure to provide adequate medical care violates a prisoner's right to be free from cruel and unusual punishment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Id.* at 104–05.

Non-medical prison personnel are not chargeable with deliberate indifference for withholding specific treatment from a prisoner unless they knew or should have known that medical personnel were mistreating or failing to treat him. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017) (citing *Spruill*, 372 F.3d at 236). When a prisoner

---

concealment, the statute of limitations "begins to run when the injured party knows or reasonably should know of his injury and its cause." *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 861 (2005).

Lomax argued Tennis concealed his diverticular sigmoid colons and thwarted Lomax's attempts to investigate his health conditions. Pl. Opp. Def. Mot. (Doc. No. 38 at 5). Because he only received confirmation of his condition after a September 2016 colonoscopy and filed this action on December 21, 2016, Lomax claimed he timely filed. *Id.* at 6 (misidentifying the filing date as Dec. 21, 2016). It is uncontested that the DOC Defendants did not know of, or participate in, medical decisions affecting Lomax. Therefore, the fraudulent concealment doctrine does not apply to toll the statute of limitations.

[27] Second Am. Compl. ¶¶ 66–68.

is under the care of a physician, non-medical prison officials are "justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

It is uncontested that the DOC Defendants did not know of or otherwise participate in the medical decisions affecting Lomax.[28] Delliponti did not have access to Lomax's medical records.[29] She relied solely on reports by the medical department, none of which indicated Lomax had restrictions preventing employment.[30] She also had no involvement in providing medical treatment to Lomax.[31] Similarly, Tennis, Wenerowicz, and Korszniak did not direct Lomax's medical treatment or revise his medical records.[32] They knew Lomax was receiving appropriate treatment from a doctor.[33] As non-medical prison officials, they were not required, nor qualified, to make or notify Lomax of any diagnosis.[34]

Tennis, Wenerowicz, and Korszniak only communicated with Lomax regarding his medical treatment when they responded to his grievance appeals.[35] Reviewing a prisoner's grievance relating to medical care alone is insufficient to impute knowledge to a prison official. *Washington v. Showalter*, 494 F. App'x 268, 272 (3d Cir. 2012) (citing *Spruill*, 372 F.3d at 236). The Eighth Amendment requires no more of the grievance examiner than he "review the prisoner's complaints and verify with the medical officials

---

[28] DOC SUF ¶¶ 9–11, 19–20, 23, 28–29, 32, 41–42.

[29] *Id.* ¶ 41.

[30] *Id.* ¶¶ 33, 41, 43.

[31] *Id.* ¶ 42.

[32] *Id.* ¶¶ 9–10, 19–20, 28–29.

[33] *Id.* ¶¶ 6, 22, 31.

[34] *Id.* ¶¶ 11, 23, 32.

[35] *Id.* ¶¶ 12, 21, 30.

8

that the prisoner was receiving treatment." *Glenn v. Barua,* 252 F. App'x 493, 498 (3d Cir. 2007) (internal citations and quotations omitted). That is what the DOC Defendants did.

Lomax has presented no evidence that the DOC Defendants knew he was not receiving proper medical treatment. They were justified in relying on the judgment of the medical professionals. There is no basis for holding them liable.

### *Dr. Symons and Dr. Blatt*

Lomax argues Dr. Symons and Dr. Blatt were deliberately indifferent to his medical needs by refusing to treat him and withholding part of his diagnosis to deny him additional care.

To state an Eighth Amendment claim arising out of the failure to treat his medical condition, Lomax must demonstrate that he had a serious medical need and prison officials were deliberately indifferent to that need. *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (citing *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 583 (3d Cir. 2003)).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Mattern v. City of Sea Isle*, 657 F. App'x 134, 139 (3d Cir. 2016) (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). A medical condition is serious when the denial or delay of medical treatment causes "unnecessary or wanton infliction of pain." *Lanzaro*, 834 F.2d at 347.

The record does not demonstrate that Lomax suffered from a serious medical condition. Dr. Immanuel K.H. Ho, a gastroenterologist, independently reviewed Lomax's medical records.[36] Dr. Ho's independent review of Lomax's medical file revealed Lomax was not suffering from pre-existing colorectal issues requiring a colonoscopy.[37] There was also no evidence that he received a colonoscopy in 2008 showing hemorrhoids and diverticular sigmoid colons.[38] Without establishing a serious medical condition, Lomax cannot maintain that Dr. Symons and Dr. Blatt were deliberately indifferent.

*Corizon and PHS*

Lomax seeks to hold Corizon and PHS liable for Dr. Symons' and Dr. Blatt's conduct. He alleges they were deliberately indifferent to his medical needs by failing to establish or enforce policies, practices, and procedures to ensure inmates are provided with prompt medical care.[39]

Under the Eighth Amendment, a defendant cannot be held liable based solely on the doctrine of *respondeat superior*. *Parkell*, 833 F.3d at 338 (citing *Natale,* 318 F.3d at 583). A corporation acting on behalf of the state can be liable where it instituted a policy, practice or custom that resulted in the plaintiff's constitutional injury. *Natale,* 318 F.3d at 583–84.

Lomax has not established a constitutional violation by either Dr. Symons or Dr. Blatt. *See Miller v. Steele-Smith*, 713 F. App'x 74, 81 (3d Cir. 2017) (holding prison's

---

[36] Health Servs. Mot. for Summ. J. Ex. 2 (Doc. No. 73-2) at ECF 22.

[37] *Id.*

[38] *Id.;* Health Servs. SUF ¶ 13.

[39] Second Am. Compl. ¶ 60.

medical services provider could not be liable under a theory of municipal liability because there were no allegations of a constitutional violation). Nor has he provided any evidence of a policy or practice. He has stated conclusions without any factual support. Thus, Corizon and PHS are entitled to summary judgment on Lomax's claim that they are liable for Dr. Symons or Dr. Blatt's alleged Eight Amendment violations.

### Retaliation

Lomax contends that in retaliation for filing grievances about his medical care, Tennis transferred him to SCI-Graterford.[40] He also claims that, once at SCI-Graterford, Wenerowicz and Korszniak falsely noted a refusal of treatment in his medical records. He also alleges that Delliponti retaliated against him by assigning him a strenuous job from which he had been removed due to his physical limitations.[41]

To establish a retaliation claim, Lomax must demonstrate facts proving: (1) the conduct that instigated the retaliatory action was constitutionally protected; (2) he suffered an adverse action as a result of the prison official's retaliatory acts; and (3) there was a causal link between the exercise of his constitutional right and the adverse action, that is, his constitutionally protected conduct was a substantial or motivating factor in the state actor's decision to take the adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (citing *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001)).

Lomax exercised his constitutional right when he filed his grievances. Filing a prison grievance is protected activity. *Watson v. Rozum,* 834 F.3d 417, 422 (3d Cir. 2016). However, there is no evidence he suffered adverse action by either Wenerowicz

---

[40] Second Am. Compl. ¶ 72.

[41] *Id.* ¶¶ 74, 78.

11

or Korszniak. Neither defendant made any notations in Lomax's medical records, let alone that he refused a colonoscopy. Wenerowicz and Korszniak maintain they never falsified, edited, or altered Lomax's medical records.[42] Lomax has produced no evidence contradicting their denials.

Nor has Lomax established that he suffered any adverse action by Delliponti or Tennis that was instigated by his having filed grievances. In other words, Lomax has not established the causal link necessary to sustain a retaliation claim. *Rauser*, 241 F.3d at 333.

Termination of prison employment constitutes an adverse action. *Wisniewski*, 857 F.3d at 157. Lomax has proffered no evidence to suggest Delliponti knew that he had filed grievances regarding his medical care. In fact, the evidentiary record shows Delliponti removed Lomax from his work assignment and stopped assigning him to other jobs for reasons unrelated to his grievances.

As SCI-Graterford's Corrections Employment Vocational Coordinator, Delliponti reviewed reports, including those from the medical department, to determine job placements for inmates.[43] Before assigning Lomax to a position in September 2008, Delliponti reviewed his medical records, which contained nothing indicating he had current or previous medical restrictions that would have prevented him from working.[44]

---

[42] DOC Def. Mot. for Summ. J. Ex. B (Doc. No. 79-4) (Wenerowicz Decl.) ¶ 8; DOC Def. Mot. for Summ. J. Ex. C (Doc. No. 79-5) ¶ 6.

[43] DOC Def. Mot. for Summ. J. Ex. D (Doc. No. 79-6) (Delliponti Decl.) ¶¶ 2–4.

[44] *Id.* ¶¶ 6–7; *id.* at Ex. A (Doc. No. 79-6).

On November 14, 2008, Delliponti voted to remove Lomax from his work assignment, not because he had filed grievances, but because he had failed to show up.[45] Due to Lomax's history of refusing work assignments, Delliponti stopped assigning him jobs.[46]

Lomax has also failed to present sufficient evidence to create a genuine issue of material fact regarding his transfer to SCI-Graterford. Transferring an inmate to another facility may be an adverse action. *DeFranco v. Wolfe*, 387 F. App'x 147, 157 (3d Cir. 2010). Yet, there is nothing in the undisputed record to suggest Lomax was transferred because he had filed grievances. *See Obiegbu v. Loretto*, 577 F. App'x 94, 96 (3d Cir. 2014) (granting summary judgment where inmate presented no evidence of a causal link between his grievance-filing and his alleged harm). Because he has not shown a causal link between the grievances and his transfer, Lomax has not established retaliation. *Id.*

Lomax's retaliation claim against Dr. Blatt has no basis. Though he alleges Dr. Blatt falsely noted in his medical records that he had refused a colonoscopy, Lomax has presented no evidence that Dr. Blatt ever treated Lomax, reviewed his medical records, or otherwise knew he had filed grievances. Lomax only argues, without evidentiary support, that Dr. Blatt was "aware of [his] pre-existing back condition[.]"[47] Dr. Blatt is entitled to summary judgment.

---

[45] Delliponti Decl. ¶ 7(e); *id.* at Ex. B (Doc. No. 79-6).

[46] Delliponti Decl. ¶ 9.

[47] Second Am. Compl. ¶ 39.

## Conclusion

Lomax's claims are time barred by the statute of limitations. Even if they were not, there is no actionable claim for a constitutional violation under 42 U.S.C. § 1983. Therefore, we shall grant summary judgment in favor of the defendants.

<u>/s/TIMOTHY J. SAVAGE</u>